IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EMPLOYERS INSURANCE COMPANY OF
WAUSAU,

                                            OPINION and
                                            ORDER
                Petitioner,

                                            09-cv-201-bbc

     v.

CERTAIN UNDERWRITERS AT LLOYDS OF
LONDON, QBE REINSURANCE (EUROPE)
LIMITED, TRANSATLANTIC REINSURANCE
COMPANY, ST. PAUL REINSURANCE COMPANY
LTD, and UNIONAMERICA INSURANCE
COMPANY LIMITED,

                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Petitioner Employers Insurance Company of Wausau and respondents Certain Underwriters at Lloyds of London, QBE Reinsurance (Europe) Limited, Transatlantic Reinsurance Company, St. Paul Reinsurance Company and Unionamerica Insurance Company Limited are engaged in arbitration proceedings in Wausau, Wisconsin, pursuant to three reinsurance agreements. Petitioner has asked this court to appoint a neutral arbitrator from among six candidates proposed by the party-appointed arbitrators pursuant

1

to Section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 and the parties' reinsurance contracts. Respondents' cross petition raises statute of limitations, estoppel and laches defenses and includes a request that the court dismiss petitioner Wausau's petition and disqualify petitioner's party-appointed arbitrator because he is non-neutral. Jurisdiction is present under chapter 2 of the Federal Arbitration Act, which expressly confers jurisdiction on federal courts to hear actions seeking to enforce an agreement or award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding. . . ."). The parties' arbitration agreement, contained in their reinsurance contracts, falls under the Convention because the parties to the agreements are not all citizens of the United States. 9 U.S.C. § 202.

As an initial matter, petitioner has filed a motion requesting oral argument concerning its petition for a third arbitrator. I have decided that a hearing is unnecessary in this matter because the parties provided sufficient information in their briefs and exhibits to permit me to reach a decision without hearing oral argument from them. Petitioner's motion for oral argument will be denied.

From the record, I find the following facts to be material.

2

BACKGROUND

Petitioner Employers Insurance Company of Wausau provides property and general liability insurance to commercial and residential property owners.  Petitioner's parent company is Liberty Mutual.  In March 1998 and March 1999, petitioner and respondents entered into contracts under which respondents agreed to reinsure some of petitioner's insurance policies.  The contracts contain an arbitration clause and a choice of law clause that specifies that the laws of Wisconsin are to govern and interpret the contracts.  In 2001, respondents refused to indemnify petitioner for incidents occurring under policies that covered specific risks that respondents believed they had not agreed to reinsure.  In 2002, the parties used an auditor to determine whether respondents had actually agreed to reinsure certain risks.  This method of resolution was unsuccessful and petitioner abandoned it in 2003.  On July 14, 2008, petitioner served respondents with a demand for arbitration.

Pursuant to the reinsurance contracts, petitioner and respondents agreed to arbitrate "any dispute arising out of the interpretation, performance or breach" of the contract.  The arbitration clause further provides for the selection of a panel of three arbitrators:

> One arbitrator shall be chosen by each party and the two arbitrators shall, before instituting the hearing, choose an impartial and disinterested third arbitrator who shall preside at the hearing. . . .

In accordance with the terms of the contract, each side has selected a party arbitrator. Petitioner designated Paul D. Hawksworth as its party-appointed arbitrator, and respondents

3

chose Trevor Clegg.  After several months of discussion, however, the party arbitrators have been unable to agree on a third arbitrator.  The contract provides for this contingency:

> If the two arbitrators are unable to agree upon the third arbitrator within 30 days of their appointment, either or both parties may petition a judge of the federal court having jurisdiction over the geographical area in which the arbitration is to take place . . . to select the third arbitrator from a list of six individuals (three named by each arbitrator).

Petitioner has submitted to this court a list of six individuals to be considered for the third arbitrator.  Petitioner nominated Caleb Fowler, Elizabeth Thompson and N. David Thompson as candidates, and respondents nominated Edward Cowen, Simon Twigden and Stephen Carter.  Each candidate completed a questionnaire concerning his or her prior insurance and reinsurance experience, contacts with the parties, counsel and party-appointed arbitrators and any expert opinions on the issues involved in the dispute.

The questionnaires reveal that all six candidates are lawyers with extensive experience in the insurance and reinsurance industry and varying levels of arbitration experience. (Fowler has 31 years of experience in the industry; Elizabeth Thompson has 23 years; N. David Thompson has 47 years; Cowen has 34 years; Twigden has 29 years; and Carter has 22 years).  All except Cowen and Carter have previous experience acting as an arbitrator or umpire (third arbitrator), to varying degrees.  (Fowler has been an arbitrator in more than 150 arbitrations, and acted as umpire in 24; Elizabeth Thompson has arbitrated in 37, and acted as umpire in 31; N. David Thompson has arbitrated in 68, and acted as umpire in 65;

4

and Carter has arbitrated in 12, and acted as an umpire in two).

The questionnaires also inquired about the candidates' possible biases and any connections they might have with the other parties involved in the arbitration. All three of petitioner's nominees and one of respondent's have served on arbitration panels in the past with petitioner's party-appointed arbitrator, Paul Hawksworth. (Fowler has served on ten previous panels with Hawksworth; Elizabeth Thompson has served on three; and N. David Thompson and Twigden have each served on one).

All of petitioner's nominees (Fowler, Elizabeth Thompson and N. David Thompson) are certified as arbitrators by the AIDA Reinsurance and Insurance Arbitration Society. According to its website, the Society is "a not-for-profit corporation that promotes improvement of the insurance and reinsurance arbitration process for the international and domestic markets." www. arias-us.org. Senior counsel for Liberty Mutual, petitioner's parent company, is the vice president of the Society. However, arbitrators who are certified by the society have to meet objective criteria to maintain their certification. Liberty Mutual has no decision making authority over re-certification.

One of respondent's nominees, Cowen, spent six years as an underwriter for one of respondents, syndicate 529 at Lloyd's of London; Twigden is currently collaborating with Baach Robinson (former counsel to respondents in this matter) in serving a mutual client; and Carter has appointed respondent's party arbitrator Trevor Clegg as an arbitrator and

5

expert witness for his clients in the past.

In addition to being unable to agree on a third arbitrator, the parties do not agree on the appropriate level of neutrality required for their party-appointed arbitrators. The resinsurance contracts provide that "[a]ll arbitrators shall be impartial and disinterested active or former executive officers of insurance or reinsurance companies or Underwriters at Lloyd's, London . . . and shall make [their] decision considering the custom and practice of the applicable insurance and reinsurance business." The reinsurance agreements further provide that if either party nominates an arbitrator whom the other party believes is interested or partial, the other party may "petition the federal court for an order disqualifying the nominated arbitrator." In numerous communications, respondents have told petitioner that they believe that party-appointed arbitrators must be impartial and "neutral," by which they mean that petitioner should not engage in ex parte communications with Hawksworth. Petitioner has responded that party-appointed arbitrators can be non-neutral and act as advocates for the party that appointed them.

## DISCUSSION

### A. Respondents' Statute of Limitations, Estoppel, Laches Defenses

Respondents argue that petitioner Wausau's petition should be dismissed because (1) the relevant statute of limitations for breach of contract claims has expired; and (2) the

6

doctrines of equitable estoppel and laches bar petitioner's request for arbitration because petitioner's unreasonable delay has prejudiced respondents.

The reinsurance contracts between petitioner and respondents contain a choice of law clause that selects the laws of Wisconsin. Wisconsin law imposes a six-year statute of limitations for breach of contract claims. Respondents contend that because petitioner did not demand arbitration until 2008, seven years after respondents refused to reimburse petitioner in 2001, its claims are barred by the Wisconsin statute of limitations. Respondents contend also that petitioner waited too long to seek arbitration; now the memories of the witnesses have faded or they are unavailable and documentary evidence has been lost.

Respondents' affirmative defenses are issues that should be raised during arbitration, not on cross petition to this court. Under Wisconsin law and the Federal Arbitration Act, courts may decide whether parties agreed to arbitrate certain disputes. Continental Casualty Co. v. American National Ins. Co., 417 F.3d 727, 730 (7th Cir. 2005); Wisconsin Auto Title Loans, Inc. v. Jones, 2005 WI App 86, ¶ 8, 280 Wis. 2d 823, 696 N.W.2d 214. Courts look to state-law principles of contract formation, consider whether the scope of the arbitration clause is narrow or broad and resolve "any doubts concerning the scope of arbitrable issues in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983); Joint School Dist. No. 10, City of Jefferson

7

v. Jefferson Education Assn., 78 Wis. 2d 94, 104 (1977). If parties are arguing about procedure or affirmative defenses to arbitration such as timeliness, the presumption is that these questions should be arbitrated. Zurich American Ins. Co. v. Watts Industies, Inc., 466 F.3d 577, 581 (7th Cir. 2006) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") .

In the reinsurance contracts at issue here, the parties agreed to arbitrate "any dispute arising out of the interpretation, performance or breach of this Contract." Given this broad arbitration clause and the presumption of arbitrability under Wisconsin law and the Federal Arbitration Act, I conclude that respondents' affirmative defenses of timeliness, estoppel and laches are issues that should be reserved for arbitration.

### B. Disqualification of Hawksworth

Respondents request that the court disqualify petitioner's party-appointed arbitrator, Paul Hawksworth, pursuant to Wisconsin law and the reinsurance contract's arbitration clause which provides that "[a]ll arbitrators shall be impartial and disinterested," because Hawksworth is non-neutral. Wisconsin law requires that all arbitrators, including party-

8

appointed arbitrators, be neutral and independent unless the parties have explicitly contracted for non-neutral arbitrators.  Borst v. Allstate Ins. Co., 2006 WI 70, ¶ 20, 291 Wis. 2d 361, 717 N.W.2d 42.  Petitioner does not argue that Hawksworth is neutral. Instead, it argues that it is the Federal Arbitration Act and not Wisconsin arbitration law that governs the reinsurance contracts, and the Federal Arbitration Act allows a party appointed arbitrator to act as an advocate for the party who appointed him.

I do not need to decide whether Wisconsin arbitration law applies to the reinsurance contracts at issue.  Even if it did apply to the agreement, I would not disqualify Hawksworth at this time because respondents have not shown that Hawksworth is "impartial" or "non-neutral."  Respondents accuse Hawksworth of being impartial because (1) he *may* have engaged in ex parte communications with petitioner concerning the merits of the reinsurance dispute; and (2) he is beholden to petitioner's parent company, Liberty Mutual, because he is certified as an arbitrator by the AIDA Reinsurance and Insurance Arbitration Society and senior counsel for Liberty Mutual is the vice president of the society.  However, Hawksworth's connections with petitioner through his certification by the AIDA Reinsurance and Insurance Arbitration Society are too attenuated to create actual or apparent impartiality.  Hawksworth's continued certification as an arbitrator is based on objective criteria, such as participating in educational courses, and is not subject to approval by Liberty Mutual.  Further, respondents have not offered evidence that Hawksworth has

9

engaged in ex parte communications with petitioner. Respondents have only speculated about whether these communications occurred, what may have been discussed and how the communications might have affected Hawksworth's neutrality. Merely alleging that ex parte communications may have occurred is not enough to require disqualification of an arbitrator. Not all ex parte communications destroy impartiality, even under the American Bar Association's Code of Ethics which the Wisconsin Supreme Court relied on in Borst. Model Code of Ethics for Arbitrators in Commercial Disputes, Canon 3 (allowing ex parte conversations in limited circumstances); Sphere Drake Ins. Co. v. All American Life Ins. Co., 307 F.3d 617, 620-22 (7th Cir. 2002) (holding that ex parte conversations do not automatically destroy impartiality).

Moreover, unless an arbitrator's impartiality is blatant, it is rare for a court to disqualify an arbitrator while an arbitration is still pending. Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co., 304 F.3d 476, 490 (5th Cir. 2002); Certain Underwriters at Lloyd's London v. Argonaut Ins. Co., 264 F. Supp. 2d 926, 935 (N.D. Cal. 2003); Availl, Inc. v. Ryder System, Inc., 110 F.3d 892, 895-96 (2d Cir. 1997). The proper way in which to insure impartiality and neutrality in arbitration proceedings is for the parties to establish "an atmosphere of frankness at the outset" of arbitration, voluntarily disclose possible biases, improper ex parte communications or other conflicts of interest and determine, in conjunction with the arbitrators, whether an arbitrator violates the requirements of

disinterest and impartiality and should recuse himself. Commonwealth Coatings Corp. v. Continental Gas. Co., 393 U.S. 145, 151 (1968); Northern Electric, Inc. v. Local Union 158, International Brotherhood of Electrical Workers, 387 F. Supp. 2d 916, 921 (E.D. Wis. 2005). Accordingly, I will not disqualify Hawksworth at this time.

### C. Third Arbitrator

Under Section 5 of the Federal Arbitration Act, I am authorized to appoint a third arbitrator in this case:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if . . . for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require.

9 U.S.C. § 5.

Before addressing the relative qualifications of each of the candidates, I must consider the qualities and characteristics desirable in a third arbitrator for this type of reinsurance arbitration. Travelers Indemnity Co. v. Everest Reinsurance Co., 2004 WL 2297860, *2 (D. Conn. Oct. 8, 2004). The reinsurance contract itself is the starting point for this analysis because it lays out certain specified qualifications that the arbitrators must possess. Under the contract, "[a]ll arbitrators shall be impartial and disinterested active or former executive

11

officers of insurance or reinsurance companies or Underwriters at Lloyd's, London," and the panel "shall make it decision considering the custom and practice of the applicable insurance and reinsurance business." Thus, executive-level knowledge of the insurance and reinsurance industry is mandatory for the prospective third arbitrator. Although the parties argue about whether the third arbitrator must be knowledgeable about insurance and reinsurance practices in the United States or in the London market, both are relevant to the dispute.

A second contract qualification for arbitrators is impartiality. The contract stipulates this absence of bias by requiring that each arbitrator be "impartial and disinterested."

The reinsurance contracts also provide that the third arbitrator must "preside at the hearing." A proposed candidate's experience arbitrating the kinds of reinsurance disputes at issue is relevant in determining whether the third arbitrator could effectively manage the arbitration process. Citrin v. Erikson, 918 F. Supp. 792, 799 (S.D.N.Y. 1996).

Turning to the relative qualifications of each candidate, I have considered the completed questionnaires and the parties' objections to each candidate as provided in their briefs. Because all six candidates are lawyers with extensive experience in the insurance and reinsurance industry, I must distinguish between the nominees by considering possible bias and relevant arbitration experience. Cowen and Carter will be dismissed from consideration because they have no experience acting as arbitrator or umpire (third arbitrator). All other

12

candidates have some experience arbitrating, but Fowler and N. David Thompson have substantially more experience as umpires than the other candidates.

As to bias, respondents object to all of petitioner's nominees because they are "beholden" to petitioner's parent company, Liberty Mutual, because of their certification as arbitrators by the AIDA Reinsurance and Insurance Arbitration Society. As discussed above, arbitrators who are certified by the society have to meet objective criteria to maintain their certification, and Liberty Mutual has no decision making authority over re-certification. Thus, any relationship between the nominees and petitioner is too attenuated to rise to the level of partiality.

Next, respondents object to petitioner's nominees because they have each served on arbitration panels with petitioner's party appointed arbitrator, Paul Hawksworth, in the past. Fowler has served with Hawksworth on ten previous panels, Elizabeth Thompson has served with Hawksworth on three previous panels and N. David Thompson served with Hawksworth on one panel nine years ago. Of course, this concern applies equally to Twigden, who served with Hawksworth on an arbitration panel in 2006.

After considering the relative qualifications of each candidates, I find N. David Thompson to be most qualified to act as third arbitrator in this case. He has the most industry experience, with 47 years in the insurance and reinsurance business. He also has substantially more umpire experience than any other candidate; he has participated in 68

13

reinsurance and insurance arbitrations, acting as umpire in 65 of them.  Finally, he has no significant connections with any of the parties involved or with their appointed arbitrators.  For these reasons, I will appoint N. David Thompson as the third arbitrator in this case.

ORDER

IT IS ORDERED that

1.  Petitioner Employers Insurance Company of Wausau's motion for oral argument in this matter is DENIED.

2.  Petitioner's petition requesting the court to appoint a third arbitrator to preside over an arbitration involving petitioner and respondents Certain Underwriters at Lloyds of London, QBE Reinsurance (Europe) Limited, Transatlantic Reinsurance Company, St. Paul Reinsurance Company and Unionamerica Insurance Company Limited is GRANTED.  N. David Thompson is APPOINTED as third arbitrator for the arbitration in this matter.

3.  Respondents' cross petition seeking disqualification of petitioner's party appointed arbitrator and dismissal of petitioner's petition based on Wisconsin's statute of limitations, estoppel and laches is DENIED.

4. The clerk of court is directed to close the case.

Entered this 28th day of September, 2009.

                                      BY THE COURT:

                                      /s/

                                      BARBARA B. CRABB
                                      District Judge